## IN THE UNITED STATES NORTHWEST DISTRICT
## NORTHERN DISTRICT OF OHIO
## CLEVELAND DIVISION

| | | |
|---|---|---|
| ELIANA OSORIO, | ) | **COMPLAINT** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No: 1:25-cv-268 |
| HUNTER WARFIELD, INC. | ) | |
| | ) | |
| & | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| JEFFERSON CAPITAL SYSTEMS, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EQUIFAX INFORMATION SERVICES, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC. | ) | |
| | ) | |

Defendants.

### COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff Eliana Osorio, by and through the undersigned counsel, and for her Complaint against Defendants Hunter Warfield, Inc. ("HW"), Jefferson Capital Systems, LLC ("JCS"), Equifax Information Services, LLC ("EQ"), and Experian Information Solutions, Inc. ("EXP"), (and together collectively, "Defendants") for violations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), states as follows:

### JURISDICTION

1.      This court has jurisdiction of the federal claim under 15 U.S.C. § 1692k(d) and 1681(p).

1

2. Venue is proper because Plaintiff resides here, the acts and transactions occurred here, and HW, JCS, EQ, and EXP, transact business here.

3. Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

4. Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5. Plaintiff resides in the city of Crosby, a part of Divide County, North Dakota 58730.

6. The acts that occurred giving rise to this complaint occurred while Defendant EXP was headquartered in Ohio, making the Northern District of Ohio, making the Cleveland Division a proper venue under 28 U.S. Code § 1391(b)(2).

## STANDING

7. Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any misrepresentations and false threats.

8. HW and JCS's collection activities violated the FDCPA.

9. Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

10. Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); Bellwood v. Dwivedi, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the

right can sue without running afoul of Article III, even if he incurs no other injury[.]").

11. "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" Lane v. Bayview Loan Servicing, LLC, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016)(quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. See id. at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied her the right to information due to her under the FDCPA."); see also Church v. Accretive Health, Inc., No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

12. "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." Lane, 2016 WL 3671467 at *4.

## PARTIES

13. Plaintiff, Eliana Osorio (hereafter "Plaintiff"), is a natural person currently residing in Divide County, in the state of North Dakota.

14. Plaintiff is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

15. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

16. Defendant HW is a Florida corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 4620 Woodland Corporate Blvd., Tampa, FL 33614.

17. Defendant JCS is a Minnesota corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 200 14th Ave E, Sartell, MN 56377.

18. HW and JCS are each engaged in the business of a collection agency, using the mails, telephone, and consumer collection agencies to collect consumer debts originally owed to others.

3

19.     HW and JCS regularly collect or attempt to collect defaulted consumer debts due or asserted to be due another, and are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

20.     Defendant EQ is a Georgia corporation with its principal place of business located at 1550 Peachtree St. NE #H-46, Atlanta, GA 30309.

21.     Defendant EXP is an Ohio corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

22.     Defendants HW and JCS are each a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

23.     EQ and EXP, are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). EQ and EXP regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

    a. Public record information;

    b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

## FACTUAL ALLEGATIONS

24.     Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed to creditors other than HW and JCS.

25.      On a date better known by HW, HW began to attempt to collect an alleged consumer debt from the Plaintiff.

26.     The alleged debt was said to be owed to Retreat at Peachtree.

27.     That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

28.     That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

29.     The reporting of the alleged debt contains an inaccurate balance.

30.     The reporting of the alleged debt contains an inaccurate status.

31.     The reporting of the alleged debt contains inaccurate delinquency information.

32.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

33.     That HW was reporting the collection account on Plaintiff's credit report with EQ and EXP.

34.     That HW was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

35.     HW's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

36.     On or about 02/05/2024, Plaintiff sent dispute letters to EQ and EXP notifying the account with HW as disputed.

37.     These letters provided notice of the inaccurate reporting to EQ and EXP.

38.     Once EQ and EXP received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case HW.

39.     EQ and EXP received the letters sent by Plaintiff.

40.     EQ and EXP transmitted notice of these disputes to HW via an Automated Credit Dispute Verification form ("ACDV").

41.     HW was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

42.     Alternatively, EQ and EXP failed to send notice of the disputes to HW after receiving notice of the disputes from Plaintiff.

43.     After receiving this notice, in any subsequent voluntary reporting, HW must then include the dispute notation on said account.

44.     On or about 04/07/2024, Plaintiff received an updated credit file from EQ.

45.     That the credit report was updated on 03/30/2024 by HW.

46.     That the updated 04/07/2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to HW.

47.     Alternatively, that the updated 04/07/2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify HW.

48.     On or about 04/07/2024, Plaintiff received an updated credit file from EXP.

49.     That the credit report was updated on 03/30/2024 by HW.

50.     That the updated 04/07/2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to HW.

51.     Alternatively, that the updated 04/07/2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify HW.

52.     That the updated 04/07/2024 credit report did not contain updated marked as disputed information.

53.     The updated 04/07/2024 credit report contained inaccurate information.

54.     HW failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

55.     HW must have voluntarily updated the Plaintiff's alleged account by communicating with EQ and EXP.

56.     That HW furnished information to EQ and EXP regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EQ and EXP of the disputes.

57.     That HW failed to update the account information and mark the account as disputed on the updated 04/07/2024 credit report after Plaintiff disputed the account on 02/05/2024 and was given notice of such by EQ and EXP.

58.     In the alternative, if HW properly updated the account information and marked the account as disputed with EQ and EXP after receiving notification of disputes from Plaintiff, then EQ and EXP failed to update the account information and mark the account as disputed on the updated 04/07/2024 credit report.

59.     That HW never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EQ and EXP.

60.     Alternatively, EQ and EXP never updated the account information and marked the account as disputed even after receiving information of the dispute remark from HW in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

61.      On a date better known by JCS, JCS began to attempt to collect an alleged consumer debt from the Plaintiff.

62.     The alleged debt was said to be owed to Lending Club Loan.

63.     That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

64.     That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

65.     The reporting of the alleged debt contains an inaccurate balance.

66.     The reporting of the alleged debt contains an inaccurate status.

67.     The reporting of the alleged debt contains inaccurate delinquency information.

68.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

69.     That JCS was reporting the collection account on Plaintiff's credit report with EQ.

70.     That JCS was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

71.     JCS's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

72.     On or about 02/05/2024, Plaintiff sent dispute letters to EQ  notifying the account with JCS as disputed.

73.     These letters provided notice of the inaccurate reporting to EQ.

74.     Once EQ  received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case JCS.

75.      EQ received the letters sent by Plaintiff.

76.      EQ transmitted notice of these disputes to JCS via an Automated Credit Dispute Verification form ("ACDV").

77.     JCS was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

78.     Alternatively, EQ failed to send notice of the disputes to JCS after receiving notice of the disputes from Plaintiff.

8

79.     After receiving this notice, in any subsequent voluntary reporting, JCS must then include the dispute notation on said account.

80.     On or about 04/07/2024, Plaintiff received an updated credit file from EQ.

81.     That the credit report was updated on 03/23/2024 by JCS.

82.     That the updated 04/07/2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to JCS.

83.     Alternatively, that the updated 04/07/2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify JCS.

84.     That the updated 04/07/2024 credit report did not contain updated marked as disputed information.

85.     Upon information and belief, the updated 04/07/2024 credit report contained inaccurate information.

86.     JCS failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

87.     JCS must have voluntarily updated the Plaintiff's alleged account by communicating with EQ and EXP.

88.     That JCS furnished information to EQ regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EQ of the disputes.

89.     That JCS failed to update the account information and mark the account as disputed on the updated 04/07/2024 credit report after Plaintiff disputed the account on 02/05/2024 and was given notice of such by EQ.

90.     In the alternative, if JCS properly updated the account information and marked the account as disputed with EQ after receiving notification of disputes from Plaintiff, then EQ failed to

update the account information and mark the account as disputed on the updated 04/07/2024 credit report.

91.     That JCS never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EQ.

92.     Alternatively, EQ never updated the account information and marked the account as disputed even after receiving information of the dispute remark from JCS in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

93.     All of HW and JCS's actions under the FDCPA complained of herein occurred within one year of the date of this Complaint.

94.     All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

95.     Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of the HW, JCS, and/or EQ and EXP.

96.     Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by HW, JCS, and/or EQ and EXP.

97.     Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by HW, JCS, and/or EQ and EXP.

98.     Plaintiff has suffered actual harm based on her costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

99.     Plaintiff's injury-in-fact is fairly traceable to the challenged representations of HW, JCS, and/or EQ and EXP.

100.     Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

**Count I: Violations Of § 1692e Of The FDCPA – False, Deceptive, Or Misleading Collection Actions**

101.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

102.    Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

103.    That because Plaintiff disputed the debt, HW and JCS, when choosing to contact the consumer reporting agencies, were obligated to inform them of the disputed status of the accounts. See Dixon v. RJM Acquisitions, L.L.C., 640 Fed. Appx. 793 (10th Cir. 2016) (Reversed summary judgment to the collection agency on the consumer's § 1692e(8) claim that after she had disputed a debt, the agency had nevertheless reported the debt without disclosing the disputed. The consumer created a genuine fact issue given that she said during the recorded conversation: "I feel that all I owe is $20." A reasonable fact finder could treat the statement as a dispute of the alleged $102.99 debt.); Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173 (10th Cir. 2013) "(We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the dispute and elects to report to a CRA.")

104.    HW and JCS used deceptive and misleading tactics when it communicated personal credit information which was known or which should have been known to be false, including the failure to communicate the debts were disputed in violation of 15 U.S.C. §§ 1692e, 1692e(8). See Sayles v. Advanced Recovery Systems, Incorporated, 865 F.3d 246, 249 (5th Cir. 2017); Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This standard requires no notification by the consumer but depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

105.    HW and JCS's collection communications are to be interpreted under the "least sophisticated consumer" standard. See, Goswami v. Am. Collections Enter., Inc., 377 F.3d 488, 495 (5th Cir. 2004); Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir.1997) (When deciding whether a debt collection letter violates the FDCPA, this court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.) See Also, Goswami, 377 F.3d at 495. (We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors.")

106.    HW and JCS violated the Plaintiff's right not to be the target of misleading debt collection communications.

107.    HW and JCS violated the Plaintiff's right to a truthful and fair debt collection process.

108.    HW and JCS's communications with Plaintiff were deceptive and misleading.

109.    HW and JCS used unfair and unconscionable means to attempt to collect the alleged debt.

110.    HW and JCS's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to HW and JCS's collection efforts.

111.    HW and JCS's failure to mark debts as disputed they know or should know are disputed violates § 1692e, 1692e(8) of the FDCPA.

112.    HW and JCS's conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding her situation.

113.    Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

114.    Here, Plaintiff has suffered an injury-in-fact in at least one of the manners

12

contemplated by Congress when it passed the FDCPA because of HW and JCS's conduct.

115.    The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. HW and JCS's false representations misled the Plaintiff in a manner that deprived her of her right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

116.    Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment.

117.    Defendants HW and JCS's violation of § 1692e of the FDCPA renders them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Eliana Osorio, prays that this Court:

A.    Declare that HW and JCS's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiff Eliana Osorio, and against HW and JCS for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

## Count II: Violations Of § 1692d Of The FDCPA – Harassment or Abuse

118.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

119.    Section 1692d prohibits any debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

120.    HW and JCS's communications with Plaintiff were meant to shame, embarrass, and harass Plaintiff by misrepresenting the alleged debts status.

121.    HW and JCS attempted to coerce Plaintiff into paying alleged debts her otherwise would not have paid by submitting false and inaccurate information to her credit report.

122.    HW and JCS could have no other purpose in doing this except to harm Plaintiff's reputation and deprive her of her ability to receive any type of credit line unless he paid the alleged debts.

123.    Defendants HW and JCS's violation of § 1692d of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Eliana Osorio, prays that this Court:

A.    Declare that HW and JCS's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiff Eliana Osorio, and against HW and JCS for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

## COUNT III: Violations Of § 1692f Of The FDCPA – Misleading Representations & Unfair Practices

124.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

125.    Section 1692f prohibits the use of unfair and unconscionable means to collect a debt.

14

126.     HW and JCS attempted to collect debts by distributing false information that would negatively impact Plaintiff's rights as a consumer, as well as that would harm Plaintiff's financial health.

127.     HW and JCS used unfair and unconscionable means to attempt to collect the alleged debts.

128.     HW and JCS's violation of § 1692f of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Eliana Osorio, prays that this Court:

A.     Declare that HW and JCS's debt collection actions violate the FDCPA;

B.     Enter judgment in favor of Plaintiff Eliana Osorio, and against HW and JCS, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.     Grant other such further relief as deemed just and proper.

## Count IV: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information

129.     Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

130.     EQ and EXP violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files they published and maintain concerning the Plaintiff.

131.     As a result of this conduct, action and inaction of EQ and EXP, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

132.     EQ and EXP's conduct, action, and inaction were willful, rendering them liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

133.     The Plaintiff is entitled to recovery costs and attorney's fees from EQ and EXP in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Eliana Osorio, prays that this Court:

A.     Declare that EQ and EXP's credit reporting actions violate the FCRA;

B.     Enter judgment in favor of Plaintiff Eliana Osorio, and against EQ and EXP, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.     Or, in the alternative, enter judgment in favor of Plaintiff Eliana Osorio, and against EQ and EXP, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.     Grant other such further relief as deemed just and proper.

## Count V: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information

134.     Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

135.     Defendant EQ and EXP violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to EQ and EXP; by failing to maintain reasonable procedures with which to filter and verify disputed information in the plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

136.    As a result of this conduct, action and inaction of EQ and EXP, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

137.    EQ and EXP's conduct, action and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

138.    The Plaintiff is entitled to recovery costs and attorney's fees from EQ and EXP in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Eliana Osorio prays that this Court:

A.    Declare that EQ and EXP's credit reporting actions violate the FCRA;

B.    Enter judgment in favor of Plaintiff Eliana Osorio, and against EQ and EXP, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.    Or, in the alternative, enter judgment in favor of Plaintiff Eliana Osorio, and against EQ and EXP, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.    Grant other such further relief as deemed just and proper.

## Count VI: Violation Of 15 U.S.C. § 1681s-2(B) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute

139.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

140.    Defendants HW and JCS violated 15 U.S.C. § 1681s-2(b) by continuing to report the HW and JCS representations within Plaintiff's credit file with EQ and EXP without also including a

notation that this debt was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the HW and JCS representations; by failing to review all relevant information regarding same; by failing to accurately respond to HW and JCS; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the HW and JCS representations to the consumer reporting agencies.

141.    As a result of this conduct, action and inaction of HW and JCS, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

142.    Defendants HW and JCS's conduct, action and inaction were willful, rendering them liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

143.    Plaintiff is entitled to recover costs and attorney's fees from HW and JCS in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Eliana Osorio, prays that this Court:

A.    Declare that HW and JCS's credit reporting actions violate the FCRA;

B.    Enter judgment in favor of Plaintiff Eliana Osorio, and against HW and JCS for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.    Or, in the alternative, enter judgment in favor of Plaintiff Eliana Osorio, and against HW and JCS, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.      Grant other such further relief as deemed just and proper.

## **JURY DEMAND**

144.    Plaintiff demands a trial by jury on all Counts so triable.

Dated: February 12, 2025

Respectfully Submitted,

**HALVORSEN KLOTE**

By:      /s/ Joel S. Halvorsen

Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
joel@hklawstl.com